May Owens et al., Administrators, Appellants, v. Iowa
County, Appellee.

EVIDENCE: Speed of Vehicle. One who is in a position to ob-
1 serve and does observe the movement of a vehicle, and is other-
wise competent, may give his opinion as to the speed of such
vehicle, even though the position occupied by him is such as to
render his opinion of little value.

NEGLIGENCE: Condition of Thing after an Accident. Evidence
2 of the defective condition of the brakes of an automobile im-
mediately after an accident is admissible as having *some* bear-
ing on the question whether they were defective immediately
before the accident, whether the driver knew of such defective
condition, and whether he was guilty of contributory negligence.

EVIDENCE: Intent. The declarations of a party which are, ap-
3 parently, uttered without conscious design, are preliminary to
the doing of an act, and are illustrative of his intention in do-
ing said act, are admissible, when such intention becomes of
itself a distinct and material fact. So held as to declarations
made just prior to starting on a journey.

WITNESSES: Transactions Offered by Administrator. A witness
4 offered *by the administrator* of a deceased person is competent
to testify to personal and relevant transactions with said
deceased.

HIGHWAYS: Inapplicable Statute Requiring Care. The statutory
5 provision that the driver of an automobile shall so prudently
drive his car as not to injure the person and property *of an-
other*, has no application to the driver who is, himself, the
injured party; but the giving of an instruction when not thus
applicable is harmless, because the law, irrespective of statute,
would demand practically the same degree of care on the part
of the driver for his own protection.

NEGLIGENCE: Allowable Speed of Automobile. The operator of
6 an automobile is not *necessarily* guilty of negligence *per se* by
failing to have the automobile under such control that he can
stop it within the distance that he can plainly see obstructions
ahead of him. So held where the operator, in the nighttime,
drove into a washout in the public highway.

**NEGLIGENCE:** Negligence Per Se of Automobile Driver. Evidence reviewed, and held not to show negligence *per se* in the driver of an automobile in driving into a washout in a public highway.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

NOVEMBER 22, 1918.

REHEARING DENIED MAY 21, 1919.

HUGH R. OWENS was killed by driving his automobile into an opening in a public highway caused by the washing out of a bridge. This action is brought by his administrators for damages.—*Reversed.*

*Dutcher, Davis & Hambrecht,* for appellants.

*Havner, Messer, Roller & Hatter, Edwin B. Wilson,* and *H. L. Bryson,* for appellee.

STEVENS, J.—Plaintiffs are the administrators of the estate of Hugh R. Owens, deceased, who was killed about 5 o'clock on the morning of September 15, 1914, when an automobile, driven by him, ran into Hilton Creek, on a public highway, about 2½ miles southeast of Marengo, at a point where a bridge had been washed out, a few days before. The former bridge was about 65 feet in length, and was reached from the east over a slightly elevated approach. About 10 days prior to the accident, a temporary bridge, about 66 feet in length, had been constructed in the highway immediately north of the former bridge, at a much lower elevation than the former bridge, and it was reached from the east by travelers turning to the right at a point about 66 feet east of the east end thereof. Deceased was alone at the time of the accident, but two witnesses testified to seeing the car in the immediate vicinity of, and closely approaching, the point of the accident. The car, when it reached the opening in the highway, turned a complete somersault, and lay in the bottom of the chasm upside down, with the radiator pointing east.

Deceased left home at about 4:10 A. M., to go to Marengo to take a train leaving that place for Des Moines shortly after 5 o'clock, and, at the time of the accident, had traveled a distance of about 12½ miles. His route took him over the "River to River Road," which curved slightly to the northwest from a point several hundred feet east of the bridge.

The negligence charged in plaintiff's petition was the failure of defendants to provide suitable and necessary warning to travelers upon the highway of the dangerous conditions resulting from the destruction of the former bridge. The principal defense urged is the alleged contributory negligence of deceased. The particular facts upon which defendants rely to establish same will be hereafter referred to.

That it was the duty of defendant to maintain its bridges in a reasonably safe condition for travel is not disputed by counsel for appellee: but it is claimed that, about 10 days prior to the accident, defendant constructed a temporary bridge across the creek, together with a suitable roadway leading from a point about 66 feet east of the east side of the former bridge thereto, and that same had been traveled for 10 days; that a beaten track was formed, and plainly visible to travelers upon the highway in the exercise of reasonable care; that a barricade, consisting of a 2x12 plank about 20 feet in length, to which was attached two upright pieces elevating the north end of the plank so that same was visible to travelers approaching from the east, extended across the highway at the time of the accident, or at least was so placed the night before, and, if down, it was without the fault of defendants, and without notice to its officers. The evidence is without conflict that a barricade such as is described above was found lying across the highway after the accident, and that the left wheels of the automobile had passed over the north end thereof. The evidence as to whether the barricade was in

position to warn travelers, or lay upon the ground across the highway, is in dispute.

I.  Many alleged errors in the admission and exclusion of evidence, and in the charge of the court, are discussed by counsel for appellants, but it will not be necessary for us to refer to all of them in detail.

1. EVIDENCE: speed of vehicle.

An employee of the contractor's, engaged in reconstructing concrete piers for a new bridge across the creek, testified that he was about 200 feet west of the bridge, when he saw the lights of a car approaching from the east; that a few minutes thereafter, he observed that same had disappeared, and he heard a buzzing noise in the creek. Going to the scene of the accident, he discovered deceased's car in the bottom of the chasm. He was permitted, over the objection of counsel for plaintiff, to testify that the speed of the automobile was from 30 to 35 miles per hour. The competency of this witness is challenged. Apparently, he was in a position to observe the movement of the car, and to express an opinion as to its speed. The weight of the evidence was for the jury. His position may have been such that his judgment would be of little value, but the evidence should not be excluded on this account. Huddy on Automobiles (4th Ed.), Section 275; *Payne v. Waterloo, C. F. & N. R. Co.*, 153 Iowa 445; *Neidy v. Littlejohn*, 146 Iowa 355.

II.  The court also admitted evidence of the condition of the brakes upon the car, following the accident, without requiring proof that the condition was the same immediately before the accident.

2. NEGLIGENCE: condition of thing after an accident.

It was the duty of deceased, in the exercise of reasonable care, to have his car equipped with brakes in such condition that he could, by the use thereof, aid in stopping or controlling the speed of the car. Evidence of its condition following the accident may have tended to throw light upon its condition

prior thereto. It is true that the car had been moved after the accident, before the witness observed the condition of the brakes, but evidence was introduced from which the jury could have found that there had been no change in the condition of the brake after the accident. Evidence was received, showing that the brake was defective after the accident, from which the jury might infer that the condition was the same immediately before the accident, and that it was probably known to deceased. The weight of this evidence, was, of course, for the jury. It may not have been very persuasive, but we think sufficient was shown to justify its admission. It was proper for the consideration of the jury upon the question of contributory negligence.

III. A witness called on behalf of defendant was permitted, over the objections of counsel for plaintiff, to testify that, in a conversation with deceased the evening before the accident, the latter stated to him that he was going to Des Moines the next morning, on a train leaving Marengo at a little past 5 A. M. Counsel for plaintiff sought to show by May Owens, in rebuttal, that deceased told her, the evening before the accident, that, if he missed the first train, he would attend to some matters of business at Marengo, and take a train leaving that place for Des Moines about an hour and a half later. This evidence was objected to, upon the ground that it was a privileged communication between husband and wife and a transaction with a person deceased, and, therefore, excluded by Section 4604 of the Code. The objection was sustained, and the evidence excluded. It is now argued by counsel for appellee that this evidence was further inadmissible as a self-serving declaration, although this objection was not made at the time. Section 4604 is not applicable. The evidence was not offered in an action against, but in favor of, the administrator. If, how-

3. EVIDENCE: intent.

4. WITNESSES: transactions offered by administrator.

ever, this evidence should be excluded as a self-serving declaration, it would be useless to reverse this case on account of its improper exclusion upon other grounds. The declaration, when made, was not intended by deceased to serve any purpose on his part, but amounted only to an expression of his mental attitude, or intention, respecting his contemplated trip to Des Moines. The Supreme Court of the United States, in *Mutual Life Ins. Co. v. Hillmon*, 145 U. S. 285 (36 L. Ed. 706), referring directly to proof of intention, said:

"When the intention to be proved is important only as qualifying an act, its connection with that act must be shown, in order to warrant the admission of declarations of the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party. The existence of a particular intention in a certain person at a certain time being a material fact to be proved, evidence that he expressed that intention at that time is as direct evidence of the fact as his own testimony that he then had that intention would be. After his death, there can hardly be any other way of proving it."

To the same effect, see 3 Wigmore on Evidence, Section 1714; *Mathews v. Great Northern R. Co.*, 81 Minn. 363 (84 N. W. 101); *Viles v. City of Waltham*, 157 Mass. 542 (32 N. E. 901); *Bigelow v. Bear*, 64 Kan. 887 (68 Pac. 73); *Baker v. Kelly*, 41 Miss. 696; *Applegate v. M'Clung's Heirs*, 3 A. K. Marsh (Ky.) 1151; *Darby v. Rice*, 1-2 Nott & M. (S. C.) 732; *Sherman v. Sherman*, 75 Iowa 136; *Nolte v. Chicago, R. I. & P. R. Co.*, 165 Iowa 721.

The declaration made by deceased to his wife tended to negative the inference which counsel for defendant seeks to draw from the other conversation: that deceased was, in fact, driving his automobile at a high rate of speed, for the purpose of catching a train. There was no other way

for plaintiff to prove the intention of deceased to catch a later train to Des Moines, in case he did not get there in time for the earlier train. Deceased could have had no conscious purpose, when the statement was made to his wife, of gaining an advantage thereby, and it was expressive only of his intention respecting his trip, but, nevertheless, tends, to some extent, to rebut the inference sought to be drawn from the evidence offered by defendants. We think this evidence should have been received.

Other alleged rulings on the admission of evidence need not be separately considered, as they are not likely to arise upon a retrial of this case.

IV. Based upon Section 1571-m19 of the 1913 Supplement to the Code, the court instructed the jury, in substance, that it was the duty of deceased to drive his automobile in a careful and prudent manner, and at a rate of speed such as not to injure the property of another or the life or limb of any person; and if, at the time, deceased was violating the foregoing requirements of the statute, he was guilty of contributory negligence, and, if same contributed in any manner to cause his death, no recovery could be had. It is quite apparent that the provisions of this statute were designed, primarily at least, to prescribe the duty of the driver of a motor vehicle, with reference to the person or property of another, and to provide safety therefor upon the public highway. But, independent of statutory requirement, it was the duty of deceased to drive his car upon the public highway in a careful and prudent manner: that is, to exercise ordinary care and prudence for his own protection in the operation thereof.

5. HIGHWAYS: inapplicable statute requiring care.

The portion of the statute relating to injuries to the property, life, or limb of another is not applicable to this case, and, in so far as the instruction related thereto, it was erroneous; but we are inclined to hold that the giving

thereof was not prejudicial to plaintiff. It is further provided by this section that a rate of speed in excess of 25 miles an hour shall, in case of injury to the person or property of another, be presumptive evidence of driving at a rate of speed which is not careful and prudent, and counsel for appellee makes some contention based upon this provision of the statute; but it is apparent that same has no application to the facts involved in this case.

V. The court further instructed the jury, in substance, that, if deceased, at the time of the accident, was driving his automobile at such a rate of speed that he could not, in the exercise of reasonable care, bring the same to a standstill within the distance he could easily see objects or depressions ahead of him in the highway, then and in that event he was guilty of negligence, and could not recover, if same contributed to his injuries. To sustain this instruction, counsel for appellee relies largely upon *Lauson v. Town of Fond Du Lac,* 141 Wis. 57 (123 N. W. 629), and *Scott v. O'Leary,* 157 Iowa 222. The doctrine of the *Lauson* case was re-affirmed by the Supreme Court of Wisconsin in *Raymond v. Sauk County,* 167 Wis. 125 (166 N. W. 29), and is now covered by statute. We recently had occasion, however, to review these authorities, and declined to adopt their holding. *Kendall v. City of Des Moines,* 183 Iowa 866. What is there said need not be repeated. It is clearly the duty of the driver of a motor vehicle upon the public highways to at all times have the same under control, and to use reasonable care to observe defects or obstructions in the public highway, and to at all times drive the same in a prudent and careful manner; but he is not bound to anticipate that bridges are defective, washed out, or otherwise dangerous. It is the duty of the proper officers, when a county bridge is removed or in a dangerous condition, immediately after notice thereof to give suitable

6. NEGLIGENCE: allowable speed of automobile.

warning to travelers upon the highway, and it is the duty of travelers thereon to use reasonable care, and to observe and heed such warnings, a failure to do which, in case of injury on account of a defective bridge, might amount to contributory negligence, and defeat recovery. If the duty is imposed upon the driver of an automobile to drive the same at such a rate of speed that it may always be stopped within the distance that objects, defects, depressions, or obstructions in the highway may be clearly visible, the duty to provide barriers, lights, or warning to attract the attention of travelers upon the highway thereto would be so relaxed as to be easily avoided.

We are unable to find wherein *Scott v. O'Leary*, supra, conflicts with the conclusion reached herein, or in *Kendall v. City of Des Moines*, supra. The instruction approved in that case was not like the one under consideration, and we find nothing in the language of the court in any way tending to sustain the instruction complained of herein. The instruction was erroneous and necessarily prejudicial.

VI. Lastly, it is argued by counsel for appellee that deceased was guilty of contributory negligence, as a matter of law, and defendant's motion for a directed verdict should have been sustained. It is true that the

7. NEGLIGENCE: negligence *per se* of automobile driver.

board of supervisors of defendant county took prompt action, after the bridge washed out, to provide a safe, temporary crossing over the creek, and were proceeding with commendable diligence to construct a new permanent bridge. For several days before the accident, travel upon the highway had been diverted from the original traveled portion at a point about 66 feet east of the east abutment of the former bridge, to the right down a somewhat steep decline across the temporary bridge, and that a new track had been formed, which, in daylight, was plainly visible. It is contended that deceased, in the exercise of ordinary care, could have seen the plank barrier, which it is claimed

was placed across the highway a few feet west of the point
where the new road turned to the right, for a distance of
275 feet east of the former bridge, but this contention as-
sumes that the barrier was up, and not lying upon the
ground.

As the driver of the automobile approached a point
about 115 feet east of the east abutment of the former
bridge, the road bore slightly toward the southeast, and then
turned to the northwest. This tended to throw the rays
from the lamps of the automobile somewhat away from the
changed course of travel, which, combined with the decline
in the new highway toward the bridge, and the grade of
the original highway above the same, tended, to some ex-
tent, at least, to conceal the changed course of travel. It
is quite clear that, had the barrier been in position to give
warning to deceased, he would, in the exercise of ordinary
care, doubtless have observed the same; but the jury may
well have found from the evidence that no barrier was up
across the highway, and that deceased had no warning of
the changed course thereof. There was some evidence that
a fog was hanging low over the creek bottom. This would,
of course, further tend to conceal the changed course in the
highway from deceased. It was proper for the jury to take
into consideration the time when the accident occurred,
the condition of the weather and of the road, the barrier,
if any therein, the speed of the automobile, and all other
facts and circumstances surrounding the transaction, in de-
termining whether deceased was, at the time, in the exercise
of reasonable care, or whether he was guilty of negligence
contributing to his death; but we cannot say, as a matter
of law, that deceased was guilty of contributory negligence,
and this question was properly left to the decision of the
jury.

Many other alleged errors in rulings upon the admis-
sion of evidence, and in the instructions given, are not like-

ly to occur upon a retrial of this case, and we do not deem it necessary to consider the same at length. The tenth instruction, in which was pointed out the duty of the driver of automobiles to have the same equipped with lights, was not applicable to the facts in this case. The evidence showed, without dispute, that the automobile was so equipped, but the instruction was probably not prejudicial to plaintiff. For the reasons indicated, the judgment of the court below must be, and is,—*Reversed.*

PRESTON, C. J., WEAVER and GAYNOR, JJ., concur.